# SUPREME JUDICIAL COURT

##### FOR THE '

## COUNTY OF SUFFOLK, NOVEMBER TERM 1839,
## AT BOSTON.

###### PRESENT :

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY,

## William W. Crease *versus* Samuel H. Babcock
## *et al.*

A reservation by the legislature, of the right to repeal an act of incorporation, for a violation of the charter or other default, is not unconstitutional on the ground of being a reservation of judicial powers ; for an inquiry by the legislature, into the affairs or defaults of a corporation, with a view to continue or discontinue it, is not a judicial act.

When the act incorporating a bank is thus repealed, the charter has " expired " and is " dissolved," within the meaning of Revised Stat. *c.* 36, § 31, so far as, from that time, to entitle the holders of bills then remaining unpaid, to all the remedies, provided by that chapter, against the stockholders individually ; notwithstanding the bank will have a qualified existence three years longer for the purpose of settling its concerns.

Bill in equity against the Chelsea bank, and against a large number of individuals alleged to be stockholders in the bank.

The bill alleges, that the legislature, in April 1836, by " an act to establish the Chelsea bank," ( *St.* 1836, *c.* 274,) formed a corporation, to continue until the 1st of October, 1851, and to be entitled to all the powers and privileges and subject to all the duties, liabilities and requirements

contained in the 36th chapter of the Revised Statutes ; that
by that chapter, (§ 31,) it is provided " that the holders of
stock in any bank, at the time when its charter shall expire,
shall be liable, in their individual capacities, for the payment
and redemption of all bills, which may have been issued by
sai l bank, and which shall remain unpaid, in proportion to the
stock they may respectively hold, at the dissolution of the
charter ; " and, (§ 40,) that if upon the examination of any
bank, it shall appear, and upon a hearing of said bank thereon,
it shall be determined by the legislature, that said bank has ex-
ceeded its powers or has failed to comply with any of the
rules, restrictions and conditions provided by law, its charter
may be declared forfeited ; that the act of incorporation was
accepted by the parties named therein and their associates, and
the bank was duly organized and commenced business in Chel-
sea, and on the 13th of October, 1836, issued two several
bank bills, for $ 1000 each, payable to bearer, and that the
plaintiff, for a valuable consideration, became the lawful bearer
and holder of the same ; and that on the 12th of April, 1837,
he presented the bills at the bank and demanded payment
thereof, and that the officers of the bank refused to pay the
same ; that the legislature, acting under the provisions of the
36th chapter above mentioned, did, on the 20th of April,
1837, by their act that day passed, ( *St.* 1837, *c.* 225,) de-
clare the charter of the bank null and forfeited, and the same
thereupon was dissolved and expired ; and that at the time of
the annulling and expiration of the charter, the individual de-
fendants, and other persons unknown, were stockholders in the
bank ; and that they have had notice of the refusal of the bank
to pay the two bills above mentioned, and by the 36th chapter
of the Revised Statutes they are liable to pay the same.

The plaintiff prays that the defendants may be required to
answer, and may be decreed to pay the amount of the two
bills, with the interest prescribed by law in such cases.

Some of the plaintiffs filed pleas. The Chelsea bank de-
murred to the bill, assigning for causes of demurrer, that the
charter was not annulled and did not expire on the 20th of
April, 1837, because the act of the legislature passed on that
day is unconstitutional ; and that the charter remains in force
by virtue of Revised Stat. *c.* 44, § 7

*Crease*
*v.*
*Babcock.*

It is provided, by Revised Stat. *c.* 36, § 2, that every bank shall, except when special provision is otherwise made, be entitled to all the powers and privileges, and be subject to all the liabilities contained in the 44th chapter.

By § 40, " any committee appointed by the legislature for the purpose, may examine into the doings of any bank chartered, &c. and shall have free access to all their books and vaults ; and if upon such an examination it shall appear, and after a hearing of said bank thereon, it shall be determined by the legislature, that said bank has exceeded its powers or has failed to comply with any of the rules, restrictions and conditions provided by law, its charter may be declared forfeited."

By *c.* 44, § 7, " all corporations, whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless be continued bodies corporate, for the term of three years after the time, when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business, for which such corporations have been or may be established."

By § 23, every act of incorporation, passed since the 11th of March, 1831, " or which shall be hereafter passed, shall at all times be subject to amendment. alteration, or repeal, at the pleasure of the legislature ; provided, that no act of incorporation shall be repealed, unless for some violation of its charter, or other default, when such charter shall contain an express provision limiting the duration of the same."

*C. G. Loring, W. H. Gardiner, Choate* and *B. Sumner*, in support of the demurrer, insisted that the repeal of the act incorporating the Chelsea bank was invalid. They said that it proceeded on the ground of a violation of the charter or other default ; that such violation or default was a misdemeanor ; which could not be investigated by the legislature, but must be tried by a court and jury, and that the legislature could not exercise judicial power, even with the consent of the party to be affected by it ; *Calder* v. *Bull,* 3 Dallas, 389 ; *Merrill* v. *Sherburne,* 1 N. Hamp. R. 204 ; 2 Inst. 45, 50 ; *Dash* v.

*Van Kleeck*, 7 Johns. R. 508 ; *Att.-Gen.* v. *Utica Ins. Co.* 2 Johns. Ch. R. 377, 378 ; *The People* v. *The Manhattan Co.* 9 Wendell, 377 ; Decl. of Rights, *art.* 30 ; *Grenville* v. *College of Physicians*, 12 Mod. 386 ; 3 Dane's Abr. 65, § 4 ; *Green* v. *Rutherforth*, 1 Ves. sen. 471 ; that the powers, rules, restrictions and conditions referred to in Revised Stat. c. 36, § 40, were created by a general law and not a law peculiar to this corporation ; that the only ground of repeal by this section, is a violation of a general law ; that the repeal is a punishment for a breach of a general law ; that the hearing of proofs, ascertaining the facts, applying the law to them and punishing the delinquents, are judicial acts ; that it is judicial power only that can be exerted in visiting corporations, or adjudging the forfeiture of a charter ; 2 Kyd on Corp. 174, 395 ; 2 Kent's Comm. (3d ed.) 300, 304, 305 ; Angell & Ames on Corp. 410, 502 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 663, 698 ; *Slee* v. *Bloom*, 5 Johns. Ch. R. 379 ; *Rex* v. *Amery*, 2 T. R. 532 ; *Canal Co.* v. *Rail Road Co.* 4 Gill & Johns. 107 ; *Rex* v. *Chancellor &c. of Cambridge*, 3 Burr. 1656 ; *Smith's case*, 4 Mod. 53 ; *Commonwealth* v *Union Ins. Co.* 5 Mass. R. 232 ; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 371 ; *Amherst Academy* v. *Cowls*, 6 Pick. 433 ; *Vernon Society* v. *Hills*, 6 Cowen, 26 ; 3 Dane, 60, § 5 ; *State Bank* v. *State*, 1 Indiana R. 267 ; that a forfeiture of a franchise can be adjudged, only according to the common law, on *scire facias* or *quo warranto*, and the cor poration has a right to be heard on the question before a jury, *Rex* v. *Pasmore*, 3 T. R. 244 ; *Holden* v. *James*, 11 Mass. R. 396 ; Decl. of Rights, *art.* 12, 15, 29, 30 ; 2 Kent's Comm. (3d ed.) 306, 312 ; Angell & Ames on Corp. 470, 510 ; *The People* v. *Utica Ins. Co.* 15 Johns. R. 386 ; *Terrett* v. *Taylor*, 9 Cranch, 43 ; *Commonwealth* v. *Fowler*, 10 Mass. R. 302 ; Yelv. (Metcalf's ed.) 190 ; that a reservation by the legislature, of a right to repeal the charter on grounds of legislative policy, as for insolvency or public expediency, upon examination to be made by the legislature, might be valid ; *Rex* v. *Amery*, 2 T. R. 540, 541, 560, 568 ; *M'Laren* v. *Pennington*, 1 Paige, 102 ; but that when the legislature reserve a right to repeal for a violation of a general law, the adjudication

<div style="margin-left:marginalia">Crease<br>v.<br>Babcock.</div>

must be by a court of law ; 1 Bl. Comm. 481 ; and that the immediate interposition of the legislature was not required for the protection of the public against the abuse of corporate powers, as a summary remedy might be had by process from this Court.

But assuming the repealing act to be constitutional, the charter of this bank has not " expired" nor been " dissolved " ; it continues in operation three years, for the purpose of enabling the bank to settle its concerns ; and until that period has elapsed, the plaintiff's remedy against the stockholders does not accrue.

*B. Rand* and *E. Hasket Derby*, for the plaintiff, contended that the charter was a conditional or limited grant ; that the legislature do not assume judicial power, but they reserve the right to declare the charter void, whenever their committee shall report that it has been violated, and the corporators assent to such reservation, by accepting the charter ; *M'Laren* v. *Pennington*, 1 Paige, 103 ; *Foster* v. *Essex Bank*, 16 Mass. R. 273 ; *Ogden* v. *Saunders*, 12 Wheat. 270 ; that although a *quo warranto* be the proper proceeding at common law, for annulling a charter, it does not follow that a new mode may not be provided by statute ; *Bank Commissioners* v. *Bank of Buffalo*, 6 Paige, 502 ; that the legislature had a right to reserve the power of revoking the charter at pleasure, and if so, it cannot be reasonably objected that they have chosen to allow the corporation the benefit of an investigation before the charter is revoked ; and that the repealing act did not impair the contract with the corporators, but was in conformity with its express provisions.

They further insisted, that the suit was not premature ; that the charter had expired and been dissolved, so far as concerns the ordinary business of a bank, and within the meaning of Revised Stat. *c.* 36, § 31 ; and it had a qualified existence for three years, merely for the purpose of administering on its effects. *Penniman* v. *Briggs*, 1 Hopkins, 302 ; *S. C.* 8 Cowen, 387.

<div style="margin-left:marginalia">*June 24th,*<br>1839.</div>

MORTON J. delivered the opinion of the Court. This is a bill in equity by one of the creditors of the Chelsea bank against a part of the stockholders, to recover of them indi-

vidually, the amount of two bank notes of $1000 each. To this bill some of the defendants have filed pleas, and others have demurred. Several questions were started in relation to the state of the pleadings, and some doubts occurred whether the bill could be maintained at all in its present form. But as these subjects were not fully discussed, we have not deemed it proper to investigate them, and not having formed a decisive opinion, we will not give any intimation in relation to them. With the aid of the great liberality always allowed in chancery proceedings, it may, even without investigation, be assumed, that any defects in form may, in the progress of the suit, be remedied.

Two questions, which arise upon the demurrer, and lie at the foundation of a recovery by the creditors of the bank against its stockholders, have been fully and ably argued. And as their decision will speed the final termination of the controversy, whatever form the claim may eventually assume, we have carefully considered them and agreed upon a result, which I will state, with some of the reasons which have led us to it.

The plaintiff, in support of his bill, relies upon the 31st section of the 36th chapter of the Revised Statutes ; which provides, that " the holders of stock in any bank, at the time when its charter shall *expire*, shall be liable, in their individual capacities, for the payment and redemption of all bills which may have been issued by said bank, and which shall remain unpaid, in proportion to the stock they may respectively hold, at the dissolution of the charter." It is not necessary to stop here to remark, that this provision is extremely general, and that much is left to implication, in relation, not only to its import, but especially to the mode of carrying it into execution. It is not even stated to whom the stockholders shall be liable, whether to the corporation, by assessments to raise the funds for redeeming the outstanding bills, or directly to the bill-holders, in a bill in their own names. And if the latter remedy be intended, it does not appear, except by inference, whether the actions are to be joint or several, in equity or at law. If the stockholders are liable to suits, it is very obvious that a bill in chancery is well adapted to the case and will lie.

This bank was incorporated April 16th, 1836, to continue

_till October 1st, 1851, and has not expired by its own limita·tion. *St.* 1836, *c.* 274. On the 19th of April, 1837, the legislature passed an act repealing its charter. *St.* 1837, *c.* 225. This, if it has the force and operation of a law, terminated the corporate existence of the bank long before the expiration of the term for which it was granted. But the validity of this act is disputed. Its constitutionality is denied ; and this raises the first and most important question which we are called upon to decide.

That a charter of incorporation is a contract between the government and the corporators, is a proposition which seems to be fully supported by the highest judicial authorities. 2 Kent's Comm. (3d ed.) 272, 306 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 518 ; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344. That it is exempt from the ordinary action of legislative power, beyond the reservations, express or implied, contained in it, is equally well supported. In other words, the government can rightfully do nothing inconsistent with the fair meaning of the contract which it has made. If therefore the legislature grant a charter for a definite period, they cannot at their will and pleasure revoke it. This comes within the prohibition of the 10th section of the 1st article of the Constitution of the United States. But it is not necessary further to discuss these general principles, which are not in controversy between the counsel, and which will furnish very little aid in the decision of the question under consideration. That depends upon the proper construction of the several statutes to which I am about to refer.

The Chelsea bank charter expressly entitled it " to all the powers and privileges," and subjected it " to all the duties, liabilities and requirements contained in the 36th chapter of the Revised Statutes." By that chapter, and by the terms of the charters granted after the enactment of these statutes, all the banks in the Commonwealth are put upon the same legal and constitutional footing. The limits of the powers and duties of all must be found in that chapter. It was intended to regulate the banking operations of the Commonwealth, and virtually constitutes the charters of all the banks.

It is not disputed that the contract with the corporators of

the Chelsea bank must be defined by this act. Indeed it derives all its powers from this source. The 40th section contains very important reservations applicable to this and other bank charters, which have been relied upon by the plaintiff's counsel. It contains a reserved right to the legislature, by its committees, to examine into the doings and the vaults and books of all the banks, and for certain specified causes, to declare any of their charters forfeited. To the constitutionality of this reservation it is objected, that although a charter may be forfeited for many causes, yet the declaration of a forfeiture is a judicial act, which by the thirtieth article of the Bill of Rights the legislature is prohibited from exercising.

The objections of the defendants' counsel to this section, are entitled to grave consideration, and we perceive great difficulty in the proper construction of it. But we do not think it necessary, in this case, to give any opinion upon it. The 2d section of the 36th chapter expressly provides, that each bank shall be entitled to all the powers and privileges, and be subject to all the liabilities contained in the 44th chapter. As all the revised statutes were enacted at the same time and came into existence by the same legislative fiat, by a well known rule of construction they must all be considered together and construed as one act. And when the Chelsea bank charter is expressly made subject to the provisions of the 36th chapter, which refers to the 44th, it must be taken to be subject to the same rules of construction which govern in all other cases. Nothing can be plainer than the intention of the legislature to place all the banks upon an equal footing.

The last section of the 13th title, upon the subject of corporations, is general and manifestly applies to and governs all the preceding regulations upon the subject, as much as if it had been repeated at the end of each chapter. No one doubts that it applies to banks. It provides, that all acts of incorporation passed after a certain time, " shall, at all times, be subject to amendment, alteration or repeal, at the pleasure of the legislature ; provided that no act of incorporation shall be *repealed*, unless for some violation of its charter or other default, when such charter shall contain an express provision limiting the duration of the same." This section constitutes a part and

29 *

<div style="text-align: right">Crease<br>v.<br>Babcock.</div>

must govern the construction of the contract with the Chelsea bank, as much as if it had been recited *verbatim* in its charter. Upon the import of this language must depend the repealing act. Whatever may be its meaning, the corporators have directly agreed to it by accepting their charter, of which this was a constituent part.

We think there can be no doubt of the right of the legislature to make such a contract. Their power to make an unlimited charter, without some such reservation, express or implied, so as to bind their *own* and their *successors'* constituents forever, we apprehend, would be more liable to be questioned. How far they might part with any portion of sovereign power, irrevocably, beyond the recovery of the people themselves, we have no occasion to inquire.

The making of grants of real and personal estate, of franchises and other rights and privileges, whether strictly speaking it may be deemed legislation or not, is undoubtedly within the competence of our legislative body. The power has always been exercised by them, and undoubtedly is more safe in their hands and falls more appropriately within their province than any other department of the government.

If they have a right to make grants, they of necessity must prescribe the terms upon which they shall be made. If they may limit their duration, they may also impose other restrictions. They may determine how much or how little, how large or how small, an estate or franchise, they will grant. They may grant absolutely or on condition ; so they may grant during pleasure, or until a certain event happens. And if a grant be accepted on the terms prescribed, it becomes a compact; and the grantees can have no reason to complain of the execution of their own contract. And Chancellor *Kent*, though with some appearance of reluctance, (2 Kent's Comm. 306,) says, "if a charter be granted and accepted, with that reservation, there seems to be no ground to question the validity and efficiency of the reservation." Angell & Ames on Corp. 504.

The case of *M'Laren* v. *Pennington*, 1 Paige, 107, is a strong case to this point. The legislature of New Jersey granted a bank charter, for which they received a bonus of $25,000. In the act of incorporation, they reserved the

power to alter, amend or repeal it. The bank went into operation, paid its bonus, and in less than one year, a shorter time than the Chelsea bank continued, the legislature deemed it necessary to interfere and actually repealed the charter. This, upon full consideration, was adjudged to be a valid re peal. It was contended that the reservation was repugnant to the grant, and therefore void. But this ground was, distinctly overruled by the chancellor ; who said, this reservation " is not a condition repugnant to the grant ; it is only a limitation of the grant."

Had the proviso to this section been omitted, this charter might have been amended, altered or *repealed*, " at the pleasure of the legislature ; " but the defendants' counsel argue that the proviso not only restricts the power to repeal, but entirely takes it away, because the inquiry whether the bank has violated its charter or committed any default, is a judicial act, and therefore cannot constitutionally be performed by the legislature. The effect of this argument is to raise banks above the control of the legislature, and place them and all corporations with limited charters, upon a different basis from other corporations.

All acts of incorporation are supposed to be granted with a view to the public welfare, as well as to promote private interest and individual enterprise, and therefore it is to be presumed that the legislature, when charters are holden at their pleasure, will not repeal them capriciously, nor without due inquiry into all the facts, and satisfactory evidence that they have ceased or failed to accomplish the objects, for which they were established. In such case, the exercise of the reserved power to repeal, could not be vitiated or invalidated, because, the legislature investigated the case to see whether it was reasonable to exercise the power before they actually repealed a charter.

The true question is whether the legislature can in any case repeal an act of incorporation granted for a term of years. Any charter may be forfeited by a violation or for other sufficient cause ; and on a proper process a judgment of forfeiture might be decreed. But this would be a judicial act and might be done without the concurrence, and against the will of the leg-

islature.  It is entirely independent of and unconnected with
the power to repeal.

But the legislature clearly intended to reserve the power to
discontinue corporations, not only for violations of their char-
ters, but also for *other defaults;* which must mean, if any
thing, some acts short of violations, but which were inconsis-
tent with, if not subversive of the ends for which the corpora-
tion was established.

They reserve the power to repeal at pleasure, provided that
on certain charters, they will not exercise it, unless the corpo-
rations have committed *some default.*  If a default has been
committed, then, by the express terms of the compact, they
have a right to exercise the power.  They have exercised it,
and therefore by the courtesy and confidence, which is due
from one department of the government to another, we are
bound to presume that the contingency, upon which the right
to exercise it depended, has happened.  Nor is the objection
that the legislature had no power to inquire into the existence
of the contingency, valid.  If any man or body of men is
invested with power to do a certain act upon the occurrence
of a certain event, when the event happens they have a right
to perform the act, and the most that can be urged against it
is, that if it be exercised before the event happens, it is void.
And this is true by whomsoever the fact is to be ascertained.

But we do not believe that the inquiry into the affairs or de-
faults of a corporation, with a view to continue or discontinue
it, is a *judicial act.*  No issue is formed.  No decree or judg-
ment is passed.  No forfeiture is adjudged.  No fine or pun-
ishment is imposed.  But an inquiry is had in such form as is
deemed most wise and expedient, with a view to ascertain
facts upon which to exert legislative power; or to learn wheth
er a contingency has happened upon which legislative action is
required.

This is the constant and necessary course of proceeding,
not only in relation to private and special acts, but also to
many public acts.  In granting new charters, or enlarging,
modifying or renewing old ones, and in a large portion of or-
dinary legislation, it is the duty of the legislature to inquire
and ascertain, whether existing facts render their action expe-

dient or necessary. These proceedings, though they bear some resemblance to, and have in view the same general object, the ascertainment of truth, yet in no proper sense can they be called *judicial acts.*

It is indispensable that this inquiry should, in the first instance, be made by the legislature. No other body can do it for them. They have restricted themselves from exercising the power of repeal, until a certain event happens. This they must necessarily ascertain before they can properly exercise the power. Their decision must, *primâ facie,* be presumed to be right. Whether it be conclusive or not, is a question which it is not necessary now to determine.

From a careful examination of the whole subject, my own opinion is, that the true construction of the 23d section is this. The legislature reserve to themselves the right to amend, alter and repeal, at their pleasure, all acts of incorporation, passed after 1831, provided that they will not *repeal* any such act, granted for a term of years, without ascertaining to their satis faction that the corporation has violated its charter or committed some other default. This restriction is imposed upon the legislative will, and the corporators confide in the wisdom and justice of the legislature not to exercise the power unless the facts clearly authorize and require them to do it. This is not an unreasonable confidence. It is to be recollected, that this restriction applies only to a total repeal, and not to an alteration or amendment, which they may exercise at pleasure in limited as well as unlimited corporations. Now if corporators are willing to accept charters with an unlimited power to amend or alter, why should they hesitate to accept them with this guarded and restricted power to repeal?

In whatever light, therefore, I view the subject, I am satisfied that the legislature had the power to repeal the Chelsea bank charter, and that their act of April 19th, 1837, was valid and effectual to repeal the act by which the bank was established.

We are next to inquire what consequences ensued upon this repeal of the charter. By Revised Stat. *c.* 44, § 7, it is provided, that all corporations, whose charters shall expire or be annulled by forfeiture or otherwise, shall be continued bodies

Crease
*v.*
Babcock.

corporate, for certain purposes therein mentioned. The object of this section is to authorize them to collect their dues, to dispose of their property, to pay their debts, and to distribute their capital stock ; but not to transact any business other than what is necessary to settle and close their concerns.

It is argued for the defendants, that the stockholders are entitled to three years, after the repeal, to close the affairs of the bank, before they are liable for the bills which the corporation has refused to pay. The provision in the 31st section is, that those who are stockholders *when* the charter *expires*, shall be liable. If the charter could not be said to *expire* till three years after its repeal, it would furnish the stockholders of an insolvent bank with ample opportunity to dispose of their stock to individuals wholly unable to redeem the bills, and thus avoid their responsibility and render this important safeguard for the public nugatory. The bills outstanding at the time of the *dissolution*, are to be paid ; and the amount is to be apportioned among the stockholders according to the amount of stock held by each at the time of the *dissolution*.

When the charter is repealed, it has ceased to have force as a *charter*. It has *expired*. This is its *dissolution*. The corporation derives no power from it. It cannot carry on business. It exists by virtue of the 7th section, and that gives it force only for certain, definite, specific and limited purposes. This qualified prolongation of the existence of the corporate body, is in the nature of an administration of its estate. All rights under the defunct corporation were fixed at its dissolution. But it has a nominal existence for the purpose of closing its concerns in the most convenient manner, and especially of compelling it to execute its contracts and discharge its obligations and liabilities. *Foster et al.* v. *Essex Bank*, 16 Mass. R. 245.

The result to which our investigation has brought us is, that the repealing act is constitutional and valid ; that by force of it the charter of the Chelsea bank *expired* and was *dissolved* on the 19th of April, 1837, within the meaning of the 31st section before cited, and the bill-holders and other creditors of the bank, from that time became entitled to all the remedies against the officers and stockholders, provided in the 36th chapter of the Revised Statutes.